## J. H. SMITH ET AL. v. SARAH LOAFMAN.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF GREENE COUNTY.

Argued October 6, 1891—Decided January 4, 1892

1. A married woman, who acquired title to lands on the execution and delivery of judgment bonds for the purchase money, cannot defend against the bonds on the ground that her only title came from a concurrent quit-claim conveyance from a prior grantee of the same grantor, and that the bonds as to her were therefore unenforceable.

(a) The obligee of the bonds, the father of the defendant, was dead. It was alleged, further, that in release of payment he had voluntarily destroyed the bonds in his lifetime. That a close confidential relation existed at the time thereof was not denied, and there was strong evidence that the obligee was also of extreme weakness, bodily and mental:

2. In such case, the burden was on the defendant to show that, in the destruction of the bonds for the purpose alleged, not only was the transaction righteous and conscientious, but that the obligee had acted therein intelligently, deliberately and freely; and this, though his disorder was merely temporary, and not operative at the particular time.

3. The alleged destruction of the bonds being voluntary and not on the footing of a contract upon a substantial consideration, it was competent, as bearing on the question of undue influence, for the plaintiff's executors to prove declarations of the obligee, before his capacity was questioned, to the effect that he intended the bonds should be paid.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 16 October Term 1891, Sup. Ct.; court below, No. 103 April Term 1888, C. P.

On March 6, 1888, John H. Smith and others, executors of the will of Dennis Iams, Sr., deceased, brought assumpsit

against Sarah Loafman, to recover upon three several judgment bonds dated September 1, 1885, each for one thousand four hundred dollars, due respectively September 2, 1885, 1886, 1887. The bonds were described in the statement of claim filed as showing on their faces that they were "for purchase money on land," but they were averred to have been lost. The defendant pleaded, non assumpsit, and payment.

At the trial, on June 17, 1890, it was shown, essentially, that in 1883, Dennis Iams, Sr., the plaintiffs' testator, entered into an agreement with David Hopkins, his son-in-law, whereby he was to convey to said Hopkins a farm containing over three hundred acres, for $18,436.87, eight thousand dollars of which was to be paid in the vendor's lifetime, and the balance, $10,436.87, to be left in the land until his death. In lieu of the interest on the last-named sum, Mr. Iams and his wife were to be maintained on the farm during their lives. Under this agreement, Hopkins and wife moved into the dwelling upon the farm with Mr. Iams and wife, thus forming one household which continued until some time in the summer or fall of 1885. A deed for the farm from Dennis Iams, Sr., and wife, to David Hopkins, bearing date July 18, 1885, was executed, but whether it was actually delivered or not was disputed in the testimony. A dissatisfaction as to the arrangement having arisen, Hopkins and wife moved from the dwelling and abandoned the land.

About September 1, 1885, Daniel Loafman, also a son-in-law, and his wife Sarah, the defendant, a daughter of Dennis Iams, Sr., moved upon the farm with Mr. Iams and wife. A deed for the same farm from Dennis Iams, Sr., and wife, to Sarah Loafman, the defendant, dated November 18, 1885, was executed, the consideration stated therein being $18,436.87; also, a quit-claim deed for the same land from Hopkins and wife to Mrs. Loafman, dated November 20, 1885, consideration, $8,000, and reciting the deed from Mr. Iams and wife to said Hopkins dated July 18, 1885; also, an agreement between Mr. Iams and Mr. and Mrs. Loafman, whereby, in further consideration of the conveyance to Mrs. Loafman, she agreed to support Mr. and Mrs. Iams during their lives; also, seven bonds in the sum of fourteen hundred dollars each, payable one day, one year, two, three, four, five and six years, respectively, and one bond in the sum of $636.87, payable seven years after date.

These papers were all delivered together about November 20, 1885. The suit was to recover upon the three of the notes which had matured.

Mr. Iams and his wife continued to live with Mr. and Mrs. Loafman, until the former both died,—Mrs. Iams on October 14, 1887, aged about seventy-five years, and Mr. Iams on January 7, 1888, aged about eighty-two years. There was much evidence to the effect that from about September 1, 1887, Mr. Iams was extremely feeble both in body and mind.

The defence set up against recovery on the bonds was, first, that on December 5, 1887, Mr. Iams, as a further consideration for the care and support of himself and wife for the two previous years, as was alleged, destroyed all the bonds given on the delivery of the deed for the farm, intending thereby to release the defendant from the payment thereof. Testimony was adduced to this effect; and, although the weakness of mind of Mr. Iams, approaching insanity, was not denied, yet it was claimed from the testimony that it was not continuous, but temporary, and that the purposed destruction of the bonds was during a lucid interval when he was perfectly competent.

A second ground of defence was that the defendant took no title to the farm in question, under her father's deed to her delivered November 20, 1885, but took the whole title thereto under the deed from Hopkins and wife, delivered to her contemporaneously with her father's deed, and therefore the notes in suit were unenforceable as to her. In support of this position, the defendant gave in evidence under objection and exception to the plaintiffs,[4] the quit-claim deed from David Hopkins and wife to the defendant, dated July 18, 1885, with the deed from Mr. Iams and wife to defendant, dated November 18, 1885, and delivered with the former on November 20, 1885, for the purpose of showing that the bonds were void, and as corroborative of the evidence showing their destruction.

The defendant gave in evidence, further, certain declarations of her father, alleged to have been made before the destruction of the bonds, to the effect that he intended to relieve her from their payment, in consideration of the care and trouble she had in supporting him and his wife. In reply to this testimony, the plaintiffs called several witnesses, and offered to prove by them declarations of Mr. Iams, in the summer of 1887, while

Charge of Court below.

of unquestionably sound mind, to the effect that he intended that the notes should be paid by the defendant after his death, and their proceeds to be then divided equally among his children. These offers were objected to and refused.[8 to 13]

At the close of the testimony, the court, INGHRAM, P. J., charged the jury in part as follows:

The plaintiffs claim there was no deed delivered by Dennis Iams to David Hopkins, or his wife, as claimed by the defendant; that the article of agreement between Dennis Iams and David Hopkins called for a deed, but the deed was to be delivered or left with a man, possibly George Durbin, holding the agreement, and was not to be delivered until the last payment was made; and that there was no delivery on the twenty-second of July, 1885, as claimed by the defendant.

The defendant claims that the testimony of the justice before whom the deed was acknowledged, and of Laben Thomas the other witness to the deed,—you will remember the deed is drawn in the proper form,—defendant claims those two witnesses were present at the date of the acknowledgment of the deed, and that Dennis Iams called to his daughter, Mrs. Priscilla Hopkins, and said to her, " here is the deed I have made for you for the farm," and handed the deed to her.

This, possibly, is not exactly the wording, but it is as we remember it. It is claimed that the testimony of the above witnesses shows they were present, and that Dennis Iams called to his daughter, Mrs. Hopkins, and stated to her what he had done, and handed her the deed. The defendant claims that was a delivery of the deed to Mrs. Hopkins at that time, and for that reason the defendant claims the title passed from Dennis Iams, and that he had no title to convey, and that his deed, dated November 18, 1885, did not convey any title to her; but that the quit-claim deed of the same date was the deed that did convey the title to them of the home farm of Dennis Iams.

You will remember, gentlemen of the jury, and it is important that you do remember the testimony bearing upon this branch of the case, because [we instruct you: If you find the deed from Dennis Iams and wife to David and Priscilla Hopkins was executed and delivered on July 22, 1885, as claimed by the defendant, the plaintiffs are not entitled to recover in

Charge of Court below.

this action, and your verdict should be for the defendant. In other words, we are of the opinion that, if that deed was executed and delivered at that time, the balance of the purchase money was coming . from David Hopkins and wife to Dennis Iams; and the notes afterwards delivered by Mrs. Loafman, the defendant, although reading for purchase money, were not for purchase money on this land, but were for a debt due from David Hopkins and wife to Dennis Iams; and therefore, being the obligations of a married woman, those notes cannot be enforced against her in this action, and the plaintiffs would not have a right to recover. If, however, you should find from the evidence that the deed from Dennis Iams and wife was not delivered to Mrs. Hopkins, wife of David Hopkins, one of the grantees in the deed, as claimed by the plaintiffs in this transaction, that he merely executed it at that time for the purpose of having it ready to deposit with the article until the time for its delivery, then, so far as that branch of the case is concerned, the plaintiffs would have a right to recover against the defendant. It depends upon how you may find that question, as to the delivery of the deed, on the twenty-second of July, 1885, between Dennis Iams and wife and David Hopkins and wife.

If you, in your deliberation in this case, see fit to take up that branch of the case first, and if you reach the conclusion after going over all the evidence in the case that the deed was delivered as claimed by the defendant, then you need go no further in the case, but return a verdict for the defendant; but if you reach the conclusion that the deed was not delivered as claimed by the defendant, then you would go into the other branch of the case, the destruction of the notes.] [7] . . . .

On the part of the plaintiffs we are asked to charge:

1. It appearing from the uncontradicted evidence adduced in this case, that Sarah Loafman, the defendant, is the daughter of plaintiffs' testator, Dennis Iams, Sr., deceased, and occupied a further confidential relation to said testator, under the contract between them dated November, 1885, whereby she agreed to keep and provide for said testator and his wife, as part consideration for the farm conveyed to defendant, and whereby said testator was to occupy a room in defendant's house and live in her family; and it being claimed by defendant in this case that the notes in suit were destroyed in defendant's pres-

Charge of Court below.

ence and in her house, while said confidential relation existed, in order to defeat the plaintiffs' action in this case the burden of proof is upon defendant to prove, by clear and satisfactory evidence, that plaintiffs' testator had competent and independent advice as to the destruction of said notes and the effect of such destruction upon his rights and estate ; and, the defendant having failed to adduce such evidence, the destruction of said notes is no defence to plaintiffs' action.

Answer : Refused.[1]

3. That, so far as the destruction of the notes in suit is concerned, in order to defeat plaintiffs' action in this case the defendant must affirmatively show, by satisfactory evidence, that, at the time the notes in suit were destroyed, plaintiffs' testator fully knew what he was doing; that he was wholly free from undue influence; that the transaction was righteous and upon full consideration, and that he had competent and independent advice as to the destruction of the notes in suit, and the effect of such destruction upon his rights and estate ; and, if the jury fail to believe that these essentials were complied with, their verdict should be for the plaintiffs, if they further believe, from the evidence, that the deed dated July 18, 1885, purporting to be from plaintiffs' testator to David Hopkins and wife was never delivered.

Answer : Refused.[2]

5. That, if the jury believe from the evidence that plaintiffs' testator sold the farm described in the deed dated November 18, 1885, and conveyed or caused the same to be conveyed to the defendant by said deed and the quit-claim deed of David Hopkins and wife, dated November 20, 1885, contemporaneously delivered to said defendant; and that she accepted the title thus conveyed to her and delivered the notes in suit to her father in part payment therefor, contemporaneously with the delivery of the said deed to her, said notes are valid as purchase money notes against the land conveyed ; and the plaintiffs are entitled to recover the full amount of the same with interest from maturity, unless they find from the evidence that said notes have been paid or otherwise satisfied.

Answer : That point is correct and is affirmed, provided you find that the deed from Dennis Iams and wife to David Hopkins and wife of the twenty-second of July, 1885, was not de-

Charge of Court below.

livered at that date as claimed by the plaintiffs. With that qualification the point is correct and is affirmed.[5]

6. That if the jury believe from the evidence that the plaintiffs' testator sold the farm described in the deed dated November 18, 1885, and conveyed or caused the same to be conveyed to the defendant, by said deed and the quit-claim deed of David Hopkins and wife, dated November 20, 1885, contemporaneously delivered to said defendant, and that she accepted the title thus conveyed to her and delivered the notes in suit to her father in part payment therefor, contemporaneously with the delivery of said deeds to her, she is estopped in this suit from denying the validity of the notes in suit as purchase money notes, she having taken and received a good and valid title to the land conveyed at the time the notes in suit were given for the purchase money thereof.

Answer: Refused.[6]

On the part of the defendant we are requested to charge:

5. If you find that Dennis Iams sold and conveyed his farm to David Hopkins and wife in July, 1885, for the consideration of $18,436.87; that soon thereafter the said Hopkins and wife sold said farm to the defendant for the same consideration; that the defendant and her husband paid eight thousand dollars of this consideration by conveying to said Hopkins and wife a tract of land valued at that sum; that in the month of November, 1885, they paid the balance thereof, to wit, the sum of $10,436.87, by giving their joint and several judgment notes to the said Dennis Iams for that amount, among which notes were the notes in suit; that said notes were received by said Iams in satisfaction of his claim against Hopkins and wife, and that Hopkins and wife about the same time conveyed said farm to the defendant: If you find these facts your verdict should be for the defendant, the notes in suit being void as to her.

Answer: That point is correct and is affirmed.[3]

7. If Dennis Iams was subject to temporary mental disorder, of such a character as would render him unfit to transact business while such disorder continued, but was at other times fully competent to transact business of the character of that in question, the presumption still is that he was competent at the time the notes in suit were alleged to have been destroyed or surrendered; and, as the plaintiffs allege that he was not competent at that time, they must prove it to the satisfaction of the jury.

Opinion of the Court.

Answer: That point is correct and is affirmed.[14]

8. If Dennis Iams was subject to temporary mental disorder, and if such disorder was caused by the use of opiates, but was otherwise of sound mind, the plaintiffs must show at the time the notes in suit were destroyed he was under such influence; and if they have failed to do so, the jury should find that he was of sound mind at the time of the alleged destruction or surrender of the notes in suit.

Answer: That point is correct and is affirmed.[15]

9. If Dennis Iams repeatedly declared his intention to give the notes in suit to the defendant, in consideration of her services to him and his wife, at a time when his mind was undoubtedly sound, this is evidence to be considered by the jury in passing upon the question whether he was of sound mind at the time of the alleged destruction or surrender of said notes.

Answer: That point is correct and is affirmed.

—The jury returned a verdict for the defendant. Judgment being entered, the plaintiffs took this appeal, assigning for error:

1, 2, 5, 6. The answers to the plaintiffs' points.[1][2][5][6]

3, 14, 15. The answers to the defendent's points.[3][14][15]

4. The admission of defendant's offer.[4]

7. The part of the charge embraced in [ ][7]

8–13. The refusal of plaintiffs' offers.[8 to 13]

*Mr. F. P. Iams* (with him *Mr. C. C. Brock, Mr. J. W. Ray* and *Mr. H. B. Axtell*), for the appellants.

*Mr. R. F. Downey* (with him *Mr. W. H. Barb, Mr. Geo. L. Wyly, Mr. J. A. J. Buchanan* and *Mr. D. S. Walton*), for the appellee.

OPINION, MR. JUSTICE STERRETT:

The existence or non-existence of a deed from Iams to Hopkins is, in the circumstances of this case, immaterial. The concurrent deeds made by Iams and Hopkins to Mrs. Loafman, the apportionment between them of the price, the acceptance of these deeds by Mrs. Loafman, and the delivery of the notes in suit, amounted to a distinct and conclusive recognition of the fact that Iams had title in the land described which he had

a right to convey. These acts would have been vain and use-less without such title. The notes in suit were treated by the parties, and were, in fact, the measure of its value; and their delivery was an essential part of the arrangement by which Mrs. Loafman obtained possession of the land. There is no allegation of adverse claim to the title so derived, and Mrs. Loafman is not in a position to deny it. Having accepted the deed, and obtained possession by virtue of the arrangement made with her father and Mr. Hopkins, she cannot be permit-ted to deny the validity of the consideration which she agreed to pay her father. " He who would take a benefit cannot dis-pute the title : " Share v. Anderson, 7 S. & R. 62.

At the time of their alleged cancellation, these notes seem to have constituted the sole remaining estate in Mr. Iams's pos-session, and if he then parted with them, he parted with his only independent means of support. That this defendant stood towards him in a special, confidential relation is not denied; and there was evidence which, if believed, would have justified the jury in finding that Mr. Iams was in a condition of ex-treme weakness. In these circumstances, the alleged cancella-tion would naturally excite grave suspicions of undue influence exerted on the part of this defendant. Assuming the existence of such confidential relation and extreme weakness, at the time when the cancellation is alleged to have been made, the bur-den would have been upon defendant to show, not only that the transaction was "righteous and conscientious," but that Mr. Iams had acted "intelligently, deliberately, and freely : " Miskey's App., 107 Pa. 611. If Mr. Iams was merely subject to a temporary disorder, which was not operative at the time of the alleged cancellation, still the burden of proof, assuming the existence of the confidential relation, must have been on the defendant to show that the transaction was "righteous and conscientious :" Idem.

On the other hand, it was clearly competent for the plaint-iffs to show the ex parte declarations of Mr. Iams in respect of his intended disposition of these notes, as bearing on the ques-tion of undue influence: Rice v. Rice, 127 Pa. 181. The de-fence was an alleged voluntary donation, and not a contract. There is no pretence that defendant gave a substantial consid-eration. From necessity, the plaintiffs must resort to sur-

rounding circumstances for evidence of undue influence, for it is obvious that it is rarely susceptible of direct proof; and the declarations of the alleged donor, when he was not subject to such influence, may have an important bearing on the question.

It is unnecessary to notice the remaining assignments of error, further than to say that they are not sustained.

> Judgment reversed, and a venire facias de novo awarded.